## The President, Directors and Company of the Michigan State Bank *v.* Eurotas P. Hastings.

On a motion for an injunction, the statements in the bill must be taken as true; and the relief sought must be consistent with the case made by the bill.

The possession of State property by the authorized agents and officers of the State, is the possession of the State.

A State may sue, but it cannot be sued in its own courts; and, where the nominal defendant was the late Auditor General of the State, and the complainants' bill sought to reach property conveyed to, and held by him, in his official capacity, *it was held,* that the State was the real party defendant, and that the Court had no jurisdiction of the case.

This was an application for an injunction. The bill stated that, in 1839, and previous thereto, the complainants were indebted to the state of Michigan, in the sum of $500,000, or thereabouts; and that, in February of that year, the bank became embarrassed, and stopped payment. That, in February, 1840, the legislature passed an act authorizing the Auditor General, State Treasurer, and Secretary of State, to settle with the bank, and appointing them commissioners for that purpose. That the bank refused to settle until the forfeiture of their charter should be remitted; and that, on the twenty-eighth day of March, 1841, an act was passed by the legislature declaring that if the bank should settle with the commissioners under the law before mentioned, and should resume specie payments on or before the first day of April, 1841, then nothing done or suffered by the bank previous to that act, should in any way affect their chartered privileges. That, on the first day of May, 1841, the bank settled with the commissioners, agreeably to the provisions of the act of February of that year, and assigned, transferred deliver-

ed, and set over to them, in payment of the debt due to the state, bills, notes, accounts, lands, and other property, amounting to $633,567.98. That an instrument by which the assignment was made, and which set forth the terms or conditions of the settlement, was executed by the commissioners on the part of the state, and by the president of the bank on behalf of the corporation, whereby the commissioners acquitted and discharged the complainants from all claims, dues, and demands, which the state had against the bank; and the assignment of the property and effects contained in the schedule annexed to said instrument was stated to be made upon the express condition, that the state should indemnify and save harmless the complainants and their grantors, immediate and remote, from and against the several liabilities stated in said agreement. That, among those liabilities was a certain bond and mortgage, on their banking-house and lot, executed by the complainants to the Bank of Michigan, (which banking-house and lot were, at the same time, conveyed to the Auditor General, subject to said mortgage,) on which there was then remaining unpaid the principal sum of $11,250.

The bill then charged, that the state had realized a large amount of money from the property so transferred; that this money had gone into the state treasury; that the state had not, by any legislative action, repudiated the settlement, and that it had taken no measures to indemnify and save harmless the complainants from said bond and mortgage, and other liabilities mentioned in the indenture. That, on the seventeenth day of February, 1842, the legislature passed an act constituting the Auditor General, State Treasurer, and Secretary of State, trustees, on behalf of the state, to take charge of the assets and property assigned to the state, and sanctioning the agreement entered

into between the bank and the commissioners, except so much thereof as purported to bind the state to indemnify the complainants, or to pay or advance money to discharge incumbrances, or for any other purpose; and these parts of said agreement were expressly rejected.   That the act also authorized the trustees to sell or lease said property, and to collect, compromise, or extend the time of payment of the debts assigned, in the best manner possible for the interest of the state; and to pay all moneys collected into the state treasury, for the redemption of state scrip. That the state had not paid the bond and mortgage given to the Bank of Michigan, but had permitted the same to be foreclosed, and the mortgaged property to be sold at a great sacrifice for much below its real value; and that it had refused to pay off and satisfy the balance still due on said bond, amounting to $7000, for which the complainants had been threatened with a suit.

The bill charged, also, that the state was insolvent and unable to pay its debts; that much of the property had been permitted to become worthless through inattention; that the settlement could not be set aside or repudiated by complainants, because it was beyond the power of the state to place the complainants in the situation they were in when the settlement was made; and that a large amount of the property so assigned by the complainants, still remained in the hands of the defendant, who was one of the commissioners.

The bill prayed for an injunction against the defendant, to inhibit the delivery of the property in his possession to the trustees of the state; and that the defendant might be declared a trustee for the complainants; and that he might be directed to sell and dispose of the property, and pay off the said bond and mortgage, and other liabilities of the complainants.

*Joy & Porter*, in support of the motion.

*Pratt, Morey, and Attorney General*, contra.

THE CHANCELLOR. The complainants' bill, for the purpose of the present motion, must be taken to be true; and the relief to which they are entitled, if any, must be consistent with the case made by the bill. *Wilkins* v. *Wilkins*, 1 *J. C. R.* 111. The complainants claim relief on the ground that the settlement made between the bank and state, on the first of May 1840, is binding on the state; and that the state has not complied with the conditions on which the settlement was made, by paying off the bond and mortgage on the banking house and lot, and the other liabilities of the complainants against which it was to indemnify them by the terms of the settlement. And they allege that the mortgage had been foreclosed, and the property sold at a great sacrifice; and that there is still a balance unpaid of $7000, for which they have been threatened with a prosecution; that the state has received large sums of money, from the property assigned to it by the complainants, and that such money has gone into the treasury of the state, and been used for other purposes than to pay off the liabilities of the complainants; and that the state is insolvent, and unable to pay its debts.

This is the substance of the complainants' bill; and they ask an injunction against the defendant, to prevent him from delivering over the property to the trustees appointed by the state to take charge of the same; and that he may be declared a trustee for the benefit of the complainants, and be directed to sell and dispose of the property, and to pay off the liabilities against which the state agreed to indemnify them.

On this statement of facts, two questions present them-

selves : *First*, whether the present suit, although instituted against Mr. Hastings, is not in fact a suit against the state to compel the performance of a contract by the state; and, if it is, then *Second*, whether the court has jurisdiction of the case.

The complainants' bill is based on the validity of the settlement.   By the settlement, the property now in the possession of Mr. Hastings was assigned and delivered by the complainants to the state; for the delivery of it to the commissioners, or to Mr. Hastings, (who was one of them) was a delivery of it to the state itself. The complainants' interest in the property, when it was assigned and delivered by them to the commissioners,  vested  in  the  state ; and must still be in the state, unless it has parted with that interest; which is not the case in the present instance. This suit, then, is nominally a suit against Mr. Hastings, but in reality a suit against the state; as its object is to have state property applied in payment of what is alleged to be a state debt, or a debt the state is bound to pay. Has this court, then, jurisdiction of the case ?   A state may sue, but it cannot be sued in its own courts, unless there is some statute giving the court jurisdiction in express terms ; and then it must be strictly pursued.   If the state could be sued like an individual, and judgment obtained, and an execution taken out, and its property levied on, and sold, great evils would be likely to result to the public from such a course; and serious obstacles might be interposed to the administration of the government itself. It will, therefore, hardly be contended that this court has jurisdiction of a case like the present, where the complainants ask the interposition of the court on a statement of facts, which shows that the state, and not the defendant, is the party in interest.   The case of *Osborn* v. *Bank of United States*, 9 *Wheat. R.* 738, which the counsel for

complainants cited, on the argument as decisive upon the question of jurisdiction, is not applicable.    The Bank of the United States, in that case, did not file their bill against Osborn and others to compel the performance of a contract between the bank and the state ; but to inhibit the execution of an unconstitutional act of the legislature, by the officers of the state ; and to obtain the restitution of property which had been taken by those officers, without authority of law, under that act.

The motion must be denied ; and the provisional injunction heretofore granted, until the motion could be heard and decided, is dissolved.

Motion denied.

Note.    The bill was afterwards amended, by making the Auditor General, State Treasurer, and Secretary of State, parties, who put in a demurrer, on which the bill was dismissed; and an appeal was taken to the Supreme Court, where the decree dismissing the bill was affirmed, but on a different ground from that taken by the Chancellor; the Supreme Court holding the Chancellor had jurisdiction of the case, and consequently that it was competent for him to have given relief against the state, if complainants had made out a proper case by their bill; that is, had shown themselves damnified by being compelled to pay off the bond and mortgage which the commissioners had agreed the state should pay.    And *Osborn* v. *The Bank of the United States,* 9 *Wheat. R.* 738, noticed by the Chancellor in the concluding part of his opinion, was relied on by the supreme court, to show the jurisdiction of the Chancellor. They appear, however, to have overlooked the broad distinction between the two cases, viz: that one was a case of *tort,* and the other of *contract.*    They admitted the state could not be sued, and yet held the Court had jurisdiction to enforce a contract against the state, in a suit to which the state was not so much as a party.    In *Osborn* v. *The Bank of the United States,* the bank sought relief on the ground that the act of the legislature, under which the officers of the state had acted, was unconstitutional and void; and on that ground, and no other, obtained relief.    The acts of a state officer, when unauthorized by the constitution and laws of the state, though done in the name of the state, are his individual acts, for which he alone, in his individual capacity, and not the state, is responsible.    Such acts are the individual acts of the person; and not of the officer in his official capacity, or of the state.    While, in the case before them, relief was asked on the ground of a contract with the state, which contract it was insisted was good and binding on the state, and should therefore be performed by the state.    The two cases were as dissimilar as any two cases well could be.    The court say in the case in Wheaton, "The state not being a party on the record, and the court having jurisdiction over those who are parties on the record, the true question is, not one of jurisdiction, but whether, in the exercise of its jurisdiction, the court ought to make a decree against the *defendants; whether they*

*are to be considered as having a real interest, or as being only nominal parties.*" * * * * "This question has already been considered. The responsibility of the officers of the state for the money taken out of the bank, was admitted, and it was acknowledged that this responsibility might be enforced by the proper action." In that case the defendants were real, not nominal parties. They were liable and might have been sued at law for the trespass. But Mr. Hastings, against whom the bill was first filed, had no interest in the contract between the state of Michigan and the bank. The bank could not have sustained an action on the contract against him at law. He was not at the time so much as an officer of the state; and the bill, with as much propriety, might have been filed against any other person who happened at the time to be in possession of any part of the property. The difficulty was not cured by making the state officers parties.                                                     C.