## DRAKE, Appellant, v. JONES *et al.*, Respondents.

1. L., being indebted to D., E. and F., assigned to D. in trust to secure said D. E. and F. certain promissory notes executed by O. & R. One J. recovered a judgment against L. Afterwards said L., D., E., F., O. & R. entered into an arrangement, by which, upon the allowance of certain credits upon said notes, O. conveyed a certain lot of ground to L., and L. at the same time conveyed the same in trust to secure D., E. and F. The sum bid by D. at this sale was less than the amount of the indebtedness, to secure which the deed of trust was given. The land was sold under this deed of trust, and D. became the purchaser. J. caused an execution to be issued upon his judgment against L. and to be levied upon L.'s interest in said lot. *Held*, that L. had no interest in the lot upon which J.'s judgment might operate as a lien; that consequently no title would pass to a purchaser at a sheriff's sale under said execution; that an injunction would not lie to restrain a sheriff's sale thereunder.

2. Sheriff's sales can not be enjoined on the ground that they will pass no title and may cast a cloud on the title of the true owner.

*Appeal from Hannibal Court of Common Pleas.*

The facts sufficiently appear in the opinion of the court.

*Porter & Harrison* and *W. M. Cooke*, for appellant.

I. Lowe had no beneficial interest in the land purchased by the notes belonging to the St. Louis creditors. The judgment in favor of Jones was not a lien upon the mere legal title in Lowe. (1 Paige Ch. 280; 5 S. & M. 702; Tallman v. Farley, 1 Barb., S. C., 280; Kiersted v. Avery, 4 Paige, 15; Whitworth v. Gaugain, 3 Hare, 416; Laughton v. Horton, 1 Hare, 549.) Again, Lowe never had such a seizin in the land as would subject it to the lien of a judgment. (4 Kent, 39.) Drake was entitled to his injunction against the

sheriff and Jones to restrain the sale under the execution. (See Gamble v. City of St. Louis, 12 Mo. 620 ; Lockwood v. City of St. Louis, 24 Mo. 21 ; Petit v. Shepherd, 5 Paige, 493 ; Norton v. Beaver, 5 Ohio, 178 ; Wright, 127 ; Kenyon v. Clark, 2 Rho. Is. 67 ; Dyer v. Armstrong, 5 Ind. 437 ; Money v. Dorsey, 7 S. & M. 727 ; Wilson v. Butler, 3 Munf. 559 ; 2 Sto. Eq. § 1503, b., 701, 827, 698.)

*T. L. Anderson,* for respondents.

I. An injunction will not lie in a case like the present. (Eden on Inj. 12.) The inquiry in this case is not whether the plaintiff has a better title than Lowe, the defendant in the execution, nor whether any title will pass by sale under the execution ; but whether the sale would impair the rights of the plaintiff.

RICHARDSON, Judge, delivered the opinion of the court.

In June, 1852, S. J. Lowe held three notes on Owsley & Reyburn amounting to $5,000, due at different times ; and, being indebted to the plaintiff and other creditors in St. Louis about $4,500, he endorsed and delivered said notes to the plaintiff in trust for the purpose of securing the said debts. Afterwards, in October, as it was feared that the creditors would not realize their demands out of the notes held as collateral security, it was agreed that if Owsley would convey a lot in Hannibal, (together with the quit-claim deed of Robards,) the conveyance would be accepted in part satisfaction of said notes to the amount of $3,500. As to Owsley, he was to receive an absolute credit on the notes for $3,500 ; but as between Lowe and his creditors, the lot was to stand as security for their debt in lieu of the credit endorsed on the collaterals. Accordingly, it was agreed between all the parties that Ousley and Robards should convey the lot to Lowe and that Lowe should simultaneously execute a deed of trust on the same, in the usual form, for the purpose of securing the said debt to his creditors ; and pursuant to this un-

derstanding Ousley and Robards executed and delivered to the attorney of the creditors a deed conveying the lot to Lowe, and at the same time Lowe conveyed the lot to Judge Cooke in trust for the purpose of securing the said debt of $4,500. The debt named in the deed of trust not being paid, the trustee advertised the lot for .sale according to the terms and stipulations of the deed, and at the sale the plaintiff became the purchaser, and received a deed. Ousley and Reyburn received a credit on the notes held by the plaintiff for $3,500, and no part of the consideration for the conveyance was paid by Lowe and the deed never came into his hands. Between the time that the foregoing arrangement was agreed on and finally consummated, the defendant recovered a judgment against Lowe in the Hannibal court of common pleas, and in January following caused an execution to issue which was levied on the lot conveyed by Ousley and Robards; and the sheriff having advertised it for sale, the plaintiff filed his petition for an injunction on the ground that the judgment was not a lien as against the plaintiff's title, and that the sale, without passing any title, would cast a cloud on his title. The court granted a temporary injunction, but on the final hearing dismissed the petition and dissolved the injunction.

The endorsement of the notes of Ousley & Reyburn to the plaintiff vested in him the legal title to them, subject to a trust in favor of the creditors whom he represented, and the lot being purchased with the notes the creditors had the right in equity to pursue the fund; and consenting to the conversion of the notes into land, the trust attached to the land and the same interest resulted in the land that they had in the notes. The conveyance to Lowe clothed him with nothing but the naked legal title, and if he had not made the deed of trust the creditors could have asserted their equity against him, and he would have held the title as their trustee and subject to their beneficial interest. As the lot did not sell for enough to pay the creditors, Lowe had no

interest in it subject to execution, and the defendant by his judgment acquired no lien, and an execution sale under it would have passed no title. Lowe had only a transitory seizin for an instant; for, at the same time that the title passed to him, he conveyed it away, as he was bound to do, and as the creditors could have compelled him to do if he had refused. The lot did not vest in him for his own use, and he was a mere conduit for passing the title to the party entitled to it. If a defendant to a judgment purchases land and receives only a title bond, any interest which he has that is subject to execution is subordinate to the vendor's paramount lien for the unpaid purchase money; and so if he receives a deed, but at the same time executes a mortgage to the vendor to secure the purchase money, his transitory seizin would not be affected by a judgment lien, except for any interest that might remain after satisfying the mortgage. The effect would be different if a conveyance or mortgage is made to a third person not representing the purchase money. This principle is illustrated in the dower law. The widow is entitled to dower in all land of which her husband was seized during the coverture; but Chancellor Kent says that a transitory seizin for an interest will not give her dower, when the same act that gives the estate to the husband conveys it out of him, and that the right of dower only attaches when the land vests in the husband beneficially for his own use. (4 Kent, 39.)

Courts of equity sometimes entertain bills *quia timet* to prevent anticipated mischief, when a party attempts to do what he has no right to do, and when the injury, if suffered to be done, might not be reparable. But we think it would be unwise to permit a sheriff's sale to be enjoined because it will pass no title and may throw a cloud over the title of another. By our statute, it is not only the land of a defendant that is subject to sale under an execution, but any interest whatever, legal or equitable; and as a sheriff's deed will have no greater operation than the defendant's quit-claim deed, nothing will pass by a sale if the defendant has

no interest subject to execution. In some of the states a party out of possession is not permitted to sell land adversely held, but here he may multiply deeds that will not pass shadows, and it is never supposed that a sheriff's deed necessarily passes any thing; for if the defendant has nothing, nothing will pass. A plaintiff may experiment with his execution, and, after selling whatever interest the defendant is supposed to have, may abandon his purchase as not worth the expense of recording a deed; but to compel him to wait with his execution and become a party to a suit or as many suits as may be brought by strangers to the judgment claiming the property, would not only be transposing the order of trials by litigating a title before instead of after a sale, but would greatly increase useless litigation and prematurely bring on trials in equity proceedings before a sale, instead of trying the title in ejectment after the sale.

If the effects of a sale under the defendant's execution, whilst it passed no interest, would cast a hurtful doubt on the plaintiff's title, which he could only remove by evidence *in pais*, and the purchaser could stand by indefinitely and refuse to litigate his right until the evidence to repel it might be lost and the plaintiff less able to contest it, and in the mean time the true owner be unable to sell and afraid to improve and thus be denied the full dominion over his property, then the exercise of the power of the court by the writ of injunction would be properly invoked as a means of preventing injury and of precautionary justice. But our law has disarmed a person having no title of the power by false clamor to injure the title of another in that way. In the first place, provision is made with minute particularity for perpetuating testimony; and then again, if the plaintiff is out of possession, he may immediately bring his ejectment; but if he is in possession, and wishes to silence an adverse claimant, he may file a petition and compel him to bring an action to try the title, or be forever barred from claiming any right or title adverse to the petitioner. (R. C. 1855, p. 1241, § 62.)

Notice may be given at the sheriff's sale of the outstand-

ing equities of third persons, which will affect the purchaser; and if the defendant has no vendible interest, the purchaser will get nothing, and he will not be allowed to suspend a pretended title over the true title to the injury of the owner. A proceeding by injunction ought not to be substituted for the action of ejectment, and when the interest of a defendant is advertised to be sold under execution it would be improper to litigate and determine the title of as many claimants as there may be before a sale by an equity proceeding, when no real controversy might arise after a sale, and, if it did, the title could be better settled then than before.

Our first impressions of this question were the same that they now are, but the learned argument of the plaintiff's counsel created doubts that led us to a careful examination of the subject in all its bearings, which has resulted in the conviction, that, under our system of laws and the practice in reference to execution sales, it would be unwise and create great confusion in the administration of justice to permit sales under execution to be enjoined on the ground that they will pass no title and might cast a cloud on the title of the true owner. Several of the authorities cited from other states, as to the power to enjoin in cases like the present one, seem to be in point; but our system is different from theirs, and we think that sound policy requires us to deny the relief the plaintiff seeks in the form and at the time it was asked.

In our opinion, the bill was properly dismissed, although we think that Lowe had no interest in the property subject to the defendant's execution; but, of course, in assessing the damages, if the defendant has sustained any, on the dissolution of the injunction, the amount of his execution will not be considered, because he was only arrested for a time in the pursuit of a shadow.

The other judges concurring, the judgment will be affirmed.