THE AMERICAN DOCK AND IMPROVEMENT CO. and others

*v.*

THE TRUSTEES FOR THE SUPPORT OF PUBLIC SCHOOLS and others.

1. Sovereign states cannot, without their consent, be sued in their own courts, where no provision to the contrary exists in their constitutions or by special enactments.

2. In 1872, the state granted certain lands under water to the West Line Co., which, as part of the consideration, gave thereon a mortgage

American Dock &c. Co. *v.* Trustees of Public Schools.

of $82,000 to the Trustees for the Support of Public Schools. The complainants claim that at the time of this grant they were in possession of the mortgaged premises under an indefeasible title; that the grant was in violation of their vested rights; that, in 1874, they themselves obtained from the riparian commissioners of the state a grant of certain contiguous premises, by an instrument containing an agreement that, in case the state had no right and power to vest the title to the mortgaged premises in the West Line Co. by the grant of 1872 (which right the instrument declared was claimed by the state but denied by the complainants), then the state should release to the complainants, free from any encumbrance thereon by mortgage given to the state, all its right, title and interest in the premises. On foreclosure of their mortgage by the trustees,—*Held*, that neither the trustees nor any prior grantees of the mortgaged premises could be enjoined from proceeding with the foreclosure and sale by reason of the agreement in the grant of 1874, or by reason of complainants' claim to have it specifically performed, because, even if binding on the state, the state cannot, in its own courts, be compelled to perform it, and also because if the trustees are other than the mere agents of the state, it is not binding on them or on any grantee of the state prior to 1874.

Bill for relief. Motion for an injunction. On order to show cause. On bill, answer and affidavits.

*Mr. F. T. Frelinghuysen, Mr. J. W. Taylor* and *Mr. B. Williamson*, for complainants.

NOTE.—A state has capacity to sue (*State* v. *Grant*, 10 *Minn. 39*; *State* v. *Buttles, 3 Ohio St. 309*; *Delafield* v. *Illinois, 26 Wend. 212, 2 Hill 159*; *Indiana* v. *Woram, 6 Hill 33*; *State* v. *Williams, 8 Tex. 384*; *James River Co.* v. *Thompson, 3 Gratt. 270*; *State* v. *Arledge*, *Bail. 551*); and also a foreign state or sovereign (*Republic* v. *De Arangoiz, 5 Duer 634*; *Republic* v. *Rothschild, 1 Sim. 106*; *King* v. *Huttill, 1 Dow & Clark 164*; *King* v. *Oliver, 2 Wash. C. C. 43*; *Emperor of Brazil* v. *Robinson, 6 Ad. & El. 801*; *King of Prussia* v. *Knepper, 22 Mo. 550*; *Glyn* v. *Soares, 3 Myl. & K. 468*. See *Emperor of Austria* v. *Day, 3 DeG. F. & J. 217*; *Nabob* v. *East India Co., 1 Ves. 371, 3 Br. C. C. 292*); or to resort to garnishment (*People* v. *Johnson, 14 Ill. 342*).

. A foreign state or ambassador cannot be sued. *Duke of Brunswick* v. *Hanover, 6 Beav. 1*; *Wadsworth* v. *Queen of Spain, 17 Q. B. 171*; *Munden* v. *Duke of Brunswick, 10 Q. B. 656*; *Magdalena Co.* v. *Martin, 2 El. & El. 94*.

A state cannot be sued in its own courts (*Chisholm* v. *Georgia, 2 Dall. 472*; *Miers* v. *Zanesville Co., 11 Ohio 273*); yet, if made a co-defendant, only the state can object (*Manning* v. *State, 14 How. Pr. 517*; *Garr* v. *Bright, 1 Barb. Ch. 157*).

*Mr. John P. Stockton,* attorney-general, and *Mr. R. Gilchrist,* for the Trustees for the Support of Public Schools.

*Mr. T. N. McCarter,* for the executors of Asa Packer, deceased, and Lloyd Chamberlain.

THE CHANCELLOR.

The complainants are the American Dock and Improvement Company, the Central Railroad Company of New Jersey, Francis S. Lathrop, receiver of the latter company, and John C. Van Horne. They apply for an injunction to restrain the Trustees for the Support of Public Schools, the New Jersey West Line Railroad Company, William Z. Larned, the receiver of that company, the executors of Asa Packer, deceased, and Lloyd Chamberlain, from proceeding to sell certain land in Hudson county, mortgaged to the Trustees for the Support of Public Schools by the West Line Company, but which the complainant corporations and Van Horne claim to own, and of which they allege they are in peaceable possession; and, also, to restrain them from disturbing the complainants in such possession. To state the matter briefly, the bill complains that the West Line Company in 1872 obtained from the state a grant purporting

---

Where a state endorsed the bonds of a railroad company, and was indemnified therefor by a mortgage on the railroad property,—*Held,* that merely because the state could not be sued was no reason why the holders of the bonds so endorsed should not be subrogated to the rights of the state. *Young* v. *Montgomery R. R.,* 2 *Woods* 606.

Suits by or against officers of the state are the same as if brought on behalf of the state itself, as the governor (*Parker* v. *Hughes,* 25 *Ga.* 374; *Parmilee* v. *McNutt,* 1 *Sm. & Marsh.* 184; *Georgia* v. *Madrazo,* 1 *Pet.* 110); or treasurer (*Com.* v. *Baldwin,* 1 *Watts* 54; *Weston* v. *Dane,* 51 *Me.* 461; *D'Aquin's Estate,* 9 *La. Ann.* 400; *McKeehan* v. *Com.,* 3 *Pa. St.* 151); or public commissioners (*State* v. *Buttles,* 3 *Ohio St.* 309; *Thomas* v. *Harrodsburg,* 3 *A. K. Marsh.* 298; *Phillips* v. *Thompson,* 1 *Johns. Ch.* 131; *State* v. *Baum,* 6 *Ohio* 155; *Com'rs* v. *Perry,* 5 *Ohio* 56; *Plumtree* v. *Dratt,* 41 *Barb.* 333); or agents (*Printup* v. *Cherokee R. R.,* 45 *Ga.* 365; *State* v. *Anderson,* 5 *Kan.* 90; *Hunter* v. *Field,* 20 *Ohio* 340; *Stewart* v. *Johnson,* *Coxe* 27; *Georgia Inst.* v. *Simpson,* 31 *Ga.* 273); or the attorney-general (*Garr* v. *Bright,* 1 *Barb. Ch.* 157); or suits may be brought directly by the state (*State* v. *Bradish,* 34 *Vt.* 419. See *Com.* v. *Levy,* 23 *Gratt.* 21).

American Dock &c. Co. *v.* Trustees of Public Schools.

and assuming to convey the land in question, which was formerly all under water and in what was Communipaw bay, and, in order to secure part of the consideration, which was $125,000, gave to the Trustees for the Support of Public Schools the bond of itself and Asa Packer, with a mortgage for $82,000 and interest, upon the land.

The complainants insist that the grant was in violation of their vested rights in the property, of which they claim to have been then and ever since in possession by good and indefeasible legal title. In other words, they allege that the state, in assuming to grant the land in question to the West Line Company, granted that to which it had no right or title, and which was at the time the property of the complainant corporations and Van Horne, and in their possession.

In 1874 the riparian commissioners, by an instrument signed by them and also by the then governor, and sealed with the great seal of the state, in consideration of $300,000, granted to the Central Railroad Company all the state's right in certain premises extending from high-water mark on the north and west shores of the bay to the exterior line for piers in the Hudson River on the east, excepting therefrom the premises granted to the West Line Company. The instrument contained an agreement that in case the state

---

State officers cannot appear in her name to enforce private rights, where the state has no interest (*People* v. *Stratton, 25 Cal. 242 ; D'Aquin's Estate, 9 La. Ann. 400 ; People* v. *North San Francisco Ass'n, 38 Cal. 564 ; Cresap* v. *McLean, 5 Leigh 381 ; Central R. R. Co.* v. *Macon, 43 Ga. 605 ; State* v. *Buttles, 3 Ohio St. 309*).

A state is constitutionally bound by its contracts (*State* v. *Crittenden Co., 19 Ark. 364 ; O'Donnell* v. *Bailey, 24 Miss. 386 ; Baldwin* v. *Com., 11 Bush 417 ; Paschal's Ann. Const. 157*) ; although they may be incapable of being specifically enforced as against the state (*Everett* v. *Towns, 17 Ga. 15, 25 ; Nurse* v. *Lord Seymour, 13 Beav. 254 ; Michigan Bank* v. *Hastings, Doug. 225.* See *Phillips* v. *Thompson, 1 Johns. Ch. 131*) ; and the repeal of the statute authorizing such contract does not destroy its obligation (*Clements* v. *State, 76 N. C. 199 ; Baldwin* v. *Com., 11 Bush 417*).

A state is not liable for the *torts* or laches of its agents. *Dodson* v. *Cocke, 1 Overt. 319 ; State* v. *Jefferson Co., 3 Humph. 305 ; United States* v. *State Bank of Boston, 96 U. S. 30 ; Com.* v. *Morrison, 2 A. K. Marsh. 93 ; Arnold's Case, 46 Pa. St. 280 ;* but see *State* v. *Farish, 23 Miss. 483 ; Metz* v. *Soule, 40 Iowa 236 ; Cooley on Torts 122, 688.*—REP.

had not the right and power to vest the title to the land in question in the West Line Company by the before-mentioned grant, which right, it was by the instrument declared, was claimed by the state but denied by the Central Railroad Company, the state should, for the consideration of one dollar, and for no other and further consideration, release to that company, free from any encumbrance thereon by mortgage given to the state, all its right, title and interest in the premises in question.

The bill prays that the land and premises comprised within the so-called West Line grant may be declared by the decree of this court to be free from the cloud or encumbrance of the mortgage to the Trustees for the Support of Public Schools; and that the title of the West Line Company, Lloyd Chamberlain and the trustees under the mortgage, and a decree made in this court thereon for foreclosure and sale of the property, in a suit brought by the trustees against the West Line Company and others, and under a sale on execution thereunder to Chamberlain (subsequently set aside, however), may be declared to be invalid; that the trustees may be restrained from proceeding to sell the mortgaged premises, and that peaceable possession thereof by the complainants may be preserved, or that it may be decreed that Chamberlain, or any person holding under him, or any purchaser at any future sale, and any person holding under him, shall not in any manner interfere with the title, peaceable possession and enjoyment of the premises in question by the complainants, and that the complainants may have further and other relief.

Although the merits of the controversy between the parties as to the title to the premises in dispute were, on the argument of this motion, elaborately and learnedly discussed on both sides, it is clear that if the question of jurisdiction raised by the trustees be decided adversely to the complainants, that decision will be fatal to the application for an injunction so far as respects the mortgage, and will render it entirely superfluous to consider the question of title in that connec-

American Dock &c. Co. v. Trustees of Public Schools.

tion.  If the state is not liable to be sued in this court, and the Trustees for the Support of Public Schools are to be regarded as mere agents of the state, the motion must fail. The bill is filed *quia timet*, and, apart from the question just stated, presents a proper case for such a bill.

The complainants, according to the bill, are and have been, from a period anterior to the making of the West Line ·grant, in possession of the property in dispute under a claim of absolute ownership.  Neither the West Line Company nor any one claiming under it has brought any suit against them to test the title.  Though the state, by its attorney-general, in 1870 brought a suit by information against the Central Railroad Company to try the title to land of which the property in question is part, the suit was not proceeded in to a decree, and the state subsequently sold the property now in dispute to the West Line Company.

Since 1872, when the state made the grant to the West Line Company, the state has had no title to the land except under the mortgage to the Trustees for the Support of Public Schools.  If the state was not liable to be sued in its own courts, then the complainants were unable to test the title by suit against it, and if the state, having begun suit, did not proceed in it to the end, the complainant corporations cannot be prejudiced by the fact that the suit was not brought to a conclusion.

Under the circumstances, denial of title, whether by notices or other means not amounting to a disturbance of their possession, cannot avail to deprive the complainant corporations of the right to bring this suit.  There is no method by which the complainants can compel the parties claiming the adverse title to try their title except in equity.  And it is such cases as this that the act "to compel the determination of claims to real estate in certain cases and to quiet the title to the same" (*Rev. p. 1189*), was designed to reach.

But though the suit will lie as against the West Line Company and its receiver, it will not lie against the state. It is a rule of universal law that a sovereign cannot, with-

out his consent, be sued in his own courts. In England, where the crown is in possession, or any title is vested in it which it is sought to divest or affect by suit, or its rights are the immediate or sole object of the proposed suit, application must be made to the king by petition of right, upon which, however, the crown may refer it to the chancellor to do right, and may direct that the attorney-general shall be made a party to a suit for the purpose, or a suit may be instituted in the court of exchequer, as a court of revenue and general auditor for the king, and relief there obtained, the attorney-general being made a party. *Mitf. Pl. 30*; *Hovenden* v. *Lord Annesley, 2 Sch. & Lef. 607, 617*; *Dicey on Parties 4.*

The rule that the sovereign cannot, without his consent, be sued in his own courts, applies to sovereign states where no provision to the contrary exists, either in their constitutions or by special enactment. *Michigan State Bank* v. *Hastings, 1 Walk. Ch. 9*; *U. S.* v. *McLemore, 4 How. 286*; *Hill* v. *U. S., 9 How. 388*; *Beers* v. *Arkansas, 20 How. 527*; *State* v. *Kirby, 2 South. 835.*

In the recent case of *Loder* v. *Baker, Arnold & Co., 10 Vr. 49*, the supreme court of the state enunciated the principle as follows: "It requires no constitutional provision to shield the state from suits by its own citizens or by the citizens of other states. It enjoys this immunity as one of the especial attributes of sovereignty, it being an established principle of jurisprudence in all civilized nations, that the sovereign cannot be sued in its own courts without its consent." See, also, *Priddy* v. *Rose, 3 Mer. 97*; *Calvert on Parties 252, 253.*

By statute of March 5th, 1872 (*Rev. p. 1223*), the state has given its consent to be sued in its own courts in certain cases. By that act, provision is made for the adjudication by any court having jurisdiction, upon any lien or encumbrance of the state on lands where suit is brought, arising out of any previous lien or encumbrance on the property, but the consent is confined to the cases mentioned in the

statute. Nor can it be doubted that the state is a necessary party to this suit. The complainants insist upon and claim the benefit of the conditional agreement to release the mortgage made in the instrument of November, 1874. This is a demand upon the state itself—a claim for the specific performance by it of what is, it is insisted, its binding contract. If it be admitted that the contract is binding on the state, it is not binding on the West Line Company nor any one claiming under it; nor is it binding on the trustees, if they are independent of the state and not its agents merely. To bind the trustees by the agreement, they must be held to be only the mere agents of the state; and, if so, their principal is a necessary party to a suit for specific performance of the agreement.

Nor can the trustees be sued independently and alone. They are mere agents of the state—its official representatives. By the act which creates the office of the trustees, the governor, the president of the senate, the speaker of the house of assembly, the attorney-general and the comptroller, and their successors in office, were constituted and appointed trustees of the fund for the support of public schools, arising either from appropriations made before the approval of the act, or which might thereafter be made by law, or which might arise from the gift, grant, bequest or devise of any person or persons whomsoever; and it is provided that they should be known by the name, style and title of "The Trustees for the Support of Public Schools;" that the public stocks and moneys theretofore appropriated by law should constitute the funds in their hands, and should be held by them in trust; the interest and dividends arising therefrom to be applied by them, or a majority of them, for the support of public schools in this state, and for no other use or purpose whatever; that all moneys thereafter received from the sales and rentals of the lands under water belonging to the state should be paid over to the trustees and appropriated for the support of free public schools, and should only be held by them in trust for that purpose, and that all leases

which should, after the approval of the act, be made of lands belonging to the state then or formerly lying under water, or which had been made since April 6th, 1871, should be transferred to the trustees and become a part of the school fund. It was provided that the investments of the fund should be made by the treasurer of the state, under their direction. They were authorized to buy in, at any foreclosure sale, at a price not to exceed the amount necessary to save the amount due on the mortgage, with costs, any property mortgaged to them, and to sell it again at such times, for such price and on such terms as the governor for the time being should approve, the consideration to be assets of the school fund.

In *Trustees for the Support of Public Schools* v. *City of Trenton, 3 Stew. Eq. 669,* the court, referring to the investments of the school fund, properly spoke of them as " the property of the state," and the decision in that case, so far as the mortgage of the complainants therein (the trustees) was concerned, was based on the theory that the trustees are mere agents of the state, and the funds in their hands state property.

In *State* v. *Trenton, 11 Vr. 91,* it was said by the court that the debt in question in that case, which was an investment on bond and mortgage, in the name of the trustees, of funds belonging to the school fund, was owing to the state, represented by the trustees; that the trustees, as such, had no individual ownership or property in the debt, but were public agents and not trustees of private property; that the debt represented so much of the state funds raised, received and held for a special purpose, and invested by authority of law, and which the trustees were required to administer, apportion and distribute, according to the express direction of the statute by which they were appointed, and that the true creditor, therefore, was not those state officers (the trustees), who merely represented the public for the convenient transaction of business, and whose duties were merely fiduciary and honorary, but the state itself. Being merely

agents of the state, the trustees are not liable to this suit, because the decree, if against them, would be in fact against the state.

In *Nurse* v. *Lord Seymour, 13 Beav. 254*, it was held that the commissioners of woods and forests, who were empowered by statute to make contracts to demise certain real property of the crown, were not liable to be sued for specific performance. The court said that the commissioners were persons merely possessed of certain powers, having duties connected with them, and who, on certain occasions, had a right to sue and be sued, by their secretary, but the actions which might be brought by or against them were to be in relation to certain matters only, and it did not find in the act anything to entitle it to say that they had a right to sue, or were liable to be sued, in respect to the specific performance of contracts.

In *Michigan State Bank* v. *Hastings, Walk. Ch. 9*, it was held that suit could not be maintained against commissioners appointed by the legislature to settle a claim in favor of the state against the bank, to declare them trustees for the latter, of property conveyed to the commissioners in the settlement, or to obtain relief in respect to a covenant to indemnify the bank, made by the commissioners in the settlement; it being held that the suit was in fact against the state. The decree was affirmed on appeal, not, however, on the ground on which the decision of the court below was based, but on the ground that there had been no breach of the condition. The appellate court held that in case of non-performance of the condition, the title to the property would revert to the bank, and that the state would have no legal title to it, and that it, therefore, might be recovered back from the commissioners by suit against them. The principle on which the cause had been decided in the court below was not only not questioned, but was affirmed, though it was held not to be applicable to the case.

The same subject came before the same court again in *Michigan State Bank* v. *Hammond, 1 Doug. 527*, and the

appellate court then said that it was admitted that no decree in the cause could be effectual against the state, and that it was also clear that no decree would be made in the case against the defendants (state officers) if the answer disclosed such a state of facts as showed the state to be the party legally interested in the property then in the hands of the defendants; but it held that, on the facts of the answer, the title had reverted to the bank, and the state had none.

The bill in this case admits that the trustees are the agents of the state, and as such are foreclosing the mortgage. The complainants seek to annul the mortgage in the hands of the trustees, and to take from them all power to enforce it, on the ground that the state, by which the mortgage was taken, had no title to the property when it made the grant to the West Line Company, and also on the ground that it agreed with the Central Railroad Company that it would release the mortgage if it had no title when it made the grant.

The trustees are not empowered to defend their title to the mortgage. They have no funds with which to carry on the litigation, and no authority to spend the money in their hands for such a purpose. Unless, therefore, the state defends the suit, their title to the mortgage must go undefended. It is obvious that, as to the title to the land, the West Line Company, or those who claim under it, are the proper parties to litigate it, and it is clear that, as to the title to the mortgage, the state is the only proper party to defend it. Unless the state is to be regarded as the owner of the mortgage, notwithstanding the fact that it was taken in the name of and is held by the trustees, how can the agreement of November, 1874, be claimed to be binding on the trustees? That agreement was made, as before stated, two years after the mortgage was taken by them, and they are not parties to it. If possessed of any validity as against the mortgage in their hands, it must be because their title to it is in fact the title of the state itself, as indeed it is, and the

claim to relief against it in the bill is grounded on that theory. The fact that the trustees have some of the characteristics of a corporation, that by law they are known as a body by a corporate name, and may bring suit, does not affect the question now before the court; they are, nevertheless, the mere agents of the state.

It is urged on behalf of the complainants, that inasmuch as the state, through the trustees, has sought the aid of this court to enforce the mortgage claim, it must be regarded as consenting to be amenable to the jurisdiction of the court, if such submission be necessary to protect its citizens against injustice by means of the suit brought by the trustees. But though the state, when it comes into its own courts as a suitor is of course liable to appropriate defences in the suit, and even to offset, it is not liable to be sued in another action without its consent to establish such defence. *U. S.* v. *McLemore, 4 How. 286; Hill* v. *U. S., 9 How. 388.*

Nor can this case, so far at least as this application for an injunction is concerned, be brought within the distinction which was made in favor of jurisdiction, where a state officer was acting injuriously under a void law, as in *Osborn* v. *U. S. Bank, 9 Wheat. 251;* or where, as in *Michigan State Bank* v. *Hastings, 1 Doug. 225,* the title of the state to the property in question in the suit was held to have depended on the performance of a condition which the state had not performed; for here the state, in making the grant, asserted a title to property which, it must be held, on this application at least, was its own originally, and its title to which it claims that it never parted with or lost until the making of the West Line grant. It is not so clear, to say the least of it, that that grant was a wanton usurpation of title to private property as to justify the granting of the injunction on that ground, and the claim to relief made against the state under the agreement and based thereon, depends on the decision of the question which this suit is brought to settle, whether the state had title or not.

Again, there is no necessity for the exercise of the restraining power of this court to prevent a sale of the property under the decree, in order to protect the complainants in their rights. The sheriff's deed will convey no greater estate to the purchaser than would have vested in the mortgagee, had the equity of redemption been duly foreclosed (*Rev. p. 117 § 72*), that is, the title which the mortgagor had, the West Line title. Moreover, the purchaser will. take his title subject to the result of this suit. Notice of *lis pendens* will give all needed security on that point. It is urged that it may be that. the complainant corporations would not have the same advantage in litigating their rights against a *bona fide* purchaser at the sheriff's sale as against the trustees. But it does not appear that such result is to be apprehended, and, if it did appear, it is obvious that if neither the state nor the trustees can be sued in respect to the title, either to the land or mortgage, the suggestion is without force or foundation.

It is not to be forgotten that the state claims that when the grant was made to the West Line Company, the state had good title to the property, and that the complainant corporations and Van Horne had none. The clear weight of authority is in favor of the proposition that, in the absence of fraud or gross and irremediable injury, courts of equity will not entertain jurisdiction in restraint of judicial sales under execution, even against third parties having no title to the property. *High on Inj.* § *266 ; Freeman* v. *Elmendorf, 3. Hal. Ch. 475 ; S. C. on appeal, Id. 658.* And where, as in this case, the law provides the means of removing the apprehended cloud, if cast, it is not necessary to enjoin a sale under execution. *High on Inj.* § *273 ; Drake* v. *Jones, 27 Mo. 428.*

The injunction will be denied, with costs. It may be remarked that the case shows no ground for the intervention of equity, to enjoin the defendants from interfering with the possession of the complainants.