(Decided 13th July, 1882.)

---

SAMUEL L. WELDE, and GEORGE H. LOGAN, Sheriff of Cecil County *vs.* WILLIAM SCOTTEN.

*Creditors under the Statute of 13th Elizabeth, ch. 5—Judgment creditor in an action of Trespass—Injunction—Application by the alienee of a Judgment debtor for an Injunction to restrain the Judgment creditor from proceeding on his Judgment against the land aliened—Right of the Judgment creditor, attacking the Conveyance as fraudulent, to have the question of Fraud tried by a Jury—Jurisdiction in Equity— Sufficiency of Pleadings for presenting the question of Jurisdiction on appeal—Equitable discretion in respect of an Injunction.*

The Statute of 13th Elizabeth, ch. 5, is sufficiently comprehensive in its terms to embrace, and does embrace, not only creditors technically so, but "all others who have cause of action, or suit, or any penalty or forfeiture; and embraces actions of slander, *trespass* and other torts."

The judgment creditor in an action of trespass, has a judgment for such a cause of action as justifies his attacking any conveyance of

the defendant made pending the suit, in some form, as fraudulently made and executed against him, if he has cause so to suppose; and should not be prevented by injunction from putting himself into such position that he may have the question of the *bona fides* of the grantee's purchase tested in a Court of law and before a jury, through an action of ejectment.

The granting or refusing an injunction rests in the sound discretion of a Court of equity, and is not a matter of absolute right; nor will equity interpose by such an extraordinary remedy if the law will afford adequate relief.

Pending an action of trespass brought by W. against H. F. S., the latter conveyed certain land to W. S. The action of trespass resulted in a judgment in favor of W., who caused execution to be issued thereon, and levied upon said land. W. S. filed a bill for an injunction to restrain the execution, and prevent a cloud being cast upon his title. The judgment creditor answered the bill, setting up fraud in the title of W. S., and alleging that the sale to him was not *bona fide*, but was made with intent to defraud the respondent of the fruits of his judgment. On appeal from a final decree enjoining said execution, it was HELD:

1st. That W. S. ought not to have been awarded an injunction to stop W. from selling, as he desired, in order that the question of fraud in the title of W. S., as charged, might be tested at law.

2nd. That W., being the person who claimed to have been defrauded by the conveyances under which W. S. took title and possession, he was entitled to select the tribunal in which he would have his grievances inquired into, and redressed, if he was entitled to redress.

3rd. That although it might be within the province of the Court of equity to interfere if it appeared that he was fraudulently setting up this claim for the purpose of wantonly injuring W. S., as charged in the bill, yet inasmuch as there was not the slightest evidence in support of that allegation, and there was no reason to suppose he was doing otherwise than making an honest endeavor to secure his legal rights, the Court could not sanction the arrest of his proceedings in that direction by injunction.

4th. That, so far as this could be regarded as a pure question of jurisdiction, it was sufficiently presented by the pleading, to have been raised on the motion to dissolve, which had been made immediately on filing the answer; but that it was not so much a ques-

tion of jurisdiction, as of the proper exercise of the equitable discretion in respect to granting the injunction.

5th. That although the complainant had no present remedy at law, and could only wait to be sued, and stand on his title and possession under it, the fact that W. might long delay his suit did not especially commend the complainant to the Court's interference by injunction upon W.

APPEAL from the Circuit Court for Cecil County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, and IRVING, J.

*John S. Wirt,* and *Albert Constable,* for the appellants.

*Hiram McCullough,* and *Henry W. Archer,* for the appellee.

IRVING, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Cecil County perpetually enjoining the appellant Welde, the judgment creditor, and George H. Logan, (the other appellant,) sheriff, having the execution in hand, from selling certain land claimed and possessed by the appellee, William Scotten, alienee of the judgment debtor.

The bill charges, that the complainant is seized, in fee, of certain real estate described in the deed, (filed as an exhibit,) from Hugh F. Scarborough, to complainant, dated the 25th day of March, 1880, which was duly executed and recorded; and, that in virtue of that deed, he is legally and equitably possessed of, and entitled to, every part of the described premises, and all rights and privileges belonging thereto; that Samuel L. Welde had obtained a judg-

ment, on the 5th of June, 1880, in the Circuit Court for Harford County against the same Hugh F. Scarborough, and that designing to injure and defraud the complainant, he had issued a *fieri facias* on that judgment, and had it directed to George H. Logan, sheriff of Cecil County, and the same had been levied upon the lands which the complainant had purchased of Hugh F. Scarborough, the defendant in the judgment, and that the lands were advertised for sale, notwithstanding Welde and the sheriff both knew that the complainant is entitled to the lands; that Welde pretends there is some latent defect in the complainant's title to him unknown, and sometimes falsely pretends that complainant did not pay a full and fair consideration for the lands, and is not a *bona fide* purchaser thereof, and that Scarborough still has some right or interest therein, the contrary of which complainant avers to be true. He then claims this to be a cloud on his title, which impairs its value, and does him irreparable injury; and prays for an injunction restraining the proposed sale under the execution.

The answer of the appellant, which is on oath, admits that he obtained judgment on the 5th day of June, 1880, as charged; and that *fieri facias* has issued thereon, and has been levied, as alleged; but avers, that the indebtedness or cause of action on which judgment was obtained, existed long prior to March, 1880, the action having been commenced thereon at the June term of Cecil County Court, 1879. It further avers that the complainant well knew of the defendant's claim long before his purchase of Scarborough, and that it was for the purpose of delaying, hindering and defrauding his creditors, and others, that Scarborough was anxious to sell his real estate which Scotten (complainant) alleges he purchased; that Scarborough conceived the idea of selling for the purpose of defrauding the appellant of the fruits of the judgment he might obtain; and that the pretended sale to the com-

plainant was not *bona fide* and for valuable consideration; but was done for the purpose of covering up Scarborough's property from the just claim of the respondent. It appears from the record and proof that the verdict and judgment recovered by appellant against Scarborough were for personal injuries for which an action of trespass was instituted as set out in the answer.

Preliminary to the inquiry whether the injunction complained of was justifiably granted, we should premise, that it is the settled. law of this State that the Statute of Elizabeth is sufficiently comprehensive in its terms to embrace, and does embrace, not only creditors technically so, but "all others who have cause of action or suit, or any penalty or forfeiture, and embraces actions of slander, trespass and other torts." *Gebhart vs. Merfield & Kemper*, 51 *Md.*, 325. The appellant Welde, therefore, has a judgment against Scarborough, for such a cause of action, as justifies his attacking any conveyance of Scarborough made pending the suit, in some form, as fraudulently made and executed against him, if he has cause to so suppose; and the real question for us to decide is, should he be prevented, by injunction, from putting himself into such position, that he may have the question of the *bona fides* of the appellee's purchase tested in a Court of law, and before a jury, through an action of ejectment. We are all of opinion that he ought not, and that it was error in the Circuit Court to hold otherwise.

Nothing is better settled in this State than that the granting or refusing an injunction, rests in the sound discretion of a Court of equity, and is not a matter of absolute right; nor will equity interpose by such an extraordinary remedy if the law will afford adequate relief. It must be conceded that there is much conflict of authority to be found in the decisions of the several States of the country, as to when a Court of equity ought to interfere, either by way of removing a cloud already existing,

Welde and Logan *vs.* Scotten.

or of preventing a cloud being cast on the title, as it is alleged is sought to be done in this case. There can be no doubt that it is within the province of a Court of equity upon a proper case made, to interpose, by way of accomplishing precautionary justice, and preventing a wrong; and the power is often exercised.

Numerous cases are to be found, where Courts of equity have interfered by injunction, to prevent a sale about to be made, lest it should unwarrantably cloud the complainant's title; and without close examination they would seem to sustain interference here for the protection of the appellee; but after the most careful examination of every case cited in argument, and also of those cited in the text books referred to, and after diligent search, we have been unable to find a single case exactly analogous to this where injunction has been granted. In none of the cases where the remedy has been allowed, as far as we have been able to find, has the applicant alleged, as he has done here, that the other party charged him with fraud in the procurement of his title, to his prejudice. We have, however, found sundry cases, where the object of the judgment creditor was to put himself in position as purchaser under the execution, to test, at law, through ejectment, the validity of another's title which he deemed fraudulent, in which the Courts refused to grant the writ, and left the question to be litigated at law. In *Bockes vs. Lansing*, 74 *N. Y.*, 441, the action was to remove a cloud upon plaintiff's title: "The plaintiff's title is founded upon the assignment in trust from George Webster to David Russell, executed and recorded in September 1846, and the conveyance by Russell, the assignee, to Simeon Webster under whom the plaintiff claims. The defendant claims under a sale by a receiver appointed in proceedings against George Webster, founded on a judgment recovered against him in October, 1846. This receiver's sale and the deeds from him on their

face did not transfer any title as against the plaintiff, being proceedings against the plaintiff's grantor subsequent to the conveyance from him under which the plaintiff claims." The Court says. "those claiming under the receiver's sale could not establish any title without first overthrowing the plaintiff's title by extrinsic evidence that the assignment made by George Webster, was fraudulent and void. In such a case, an action of this description cannot be maintained. It is only where there is an instrument or proceeding which on its face purports to create or convey a title paramount to that of the party seeking relief, or an incumbrance thereon, that an action will lie to set aside such instrument or proceeding as a cloud upon the plaintiff's title." In this opinion seven of nine judges concurred, the others being absent. It may be, that in the last sentence we have quoted, the law is stated more broadly than we should adopt, or are called on to adopt in this case; but to the principle, that the party alleging the fraud should be left to assert his claim in a *forum* where he can have a jury trial, we unhesitatingly assent. *Freeman vs. Elmendorf and others,* 3 *Halsted's Chancery Reports,* 475, is singularly like this case, and precisely "in point." In that case, Elmendorf recovered a judgment against Matthew Freeman, February, 1841, and issued a *fieri facias* which was levied on a farm and house and lots as the property of the judgment debtor. Robert Freeman, a son of the judgment debtor, for himself, and as guardian to his infant children, filed a bill in equity alleging, that several years anterior to the judgment rendered, the property had been conveyed to him by deed of bargain and sale, and that he had conveyed the same to his infant children, and asked injunction to restrain the sale under the *fieri facias* upon the judgment.

Preliminary injunction was granted upon the showing of the bill, as was done in the case now before us. An answer was filed denying the *bona fides* of the deeds

under which the complainant claimed, and stating facts tending to show the same were fraudulently made; and denying the validity of the deeds as against the judgment for that reason. Upon a motion to dissolve, the Chancellor decided that the case was a proper one for a law Court, and that the judgment creditor should be permitted to proceed to sell under his execution, that the question of *bona fides* might be tried under an action of ejectment. The Court said that the complainants were "in possession, and if their deeds were good as against the judgment they will not be disturbed by the sheriff's making a deed to any one else." The injunction was accordingly dissolved. An appeal was taken, and the order of the Chancellor, dissolving the injunction, was affirmed.

Chief Justice GREEN, speaking for the Court of Appeals said, the whole question was one of legal title and "if the sheriff is enjoined from selling under the execution, there is no mode in which the question of title could be tried at law." 3 *Halsted Ch. Rep.*, 657.

In *Winch's Appeal*, 61 *Pa. St.*, 426, we have a case of a married woman filing a bill alleging herself to be the owner in her own right of certain property, (not estate,) and that the defendant had sold the property under a judgment against her husband, and asking an injunction to stay the execution by the sheriff of a deed, in perfection of the sale. The defendant replied, charging the complainant's title to be fraudulently procured against the husband's creditors. Testimony was taken and injunction was granted. On appeal, the decree for injunction was reversed, and the bill was dismissed. The Court said that where the title of the wife was disputed as fraudulent, it was error to enjoin an execution and sale on the judgment, and thus withdraw from the jury the contested facts. The Court uses this language: "the jurisdiction given to a Court of equity for the prevention, or restraint of the commission of acts contrary to law, and prejudicial to the

rights of individuals, was never intended to be used to obstruct the collection of debts.  It is only where the creditor is undeniably proceeding against right and justice, to the use of process of law, to the injury of another, that equity intervenes to stay his hand.  To adopt another rule would lead to a constant use of the powers of equity to hinder and stay the collection of honest claims, and prevent the creditor from reaching the marrow of a fraud."

We concur in the view taken in the cases which we have cited, and in further support of the principles so laid down we refer to 1 *High on Injunctions, secs.* 266, 267, 268; *Moore vs. Cord,* 14 *Wisconsin,* 213; *Heywood vs. City of Buffalo,* 14 *N. Y.,* 539; *Townsend vs. The Mayor,* 77 *N. Y.,* 542; *Van Doren vs. The Mayor, &c. of N. Y.,* 9 *Paige,* 388; *Drake vs. Jones,* 27 *Mo.,* 428.  In the last cited case the Court, said to compel the execution creditor to wait with his execution, and become a party to a suit in equity, would "not only be transferring the order of trials, by litigating a title before instead of after a sale, but would greatly increase useless litigation, and prematurely bring on trials in equity before a sale, instead of trying the title in ejectment after the sale."

The cases of *Lewis vs. Levy,* 16 *Md.,* 85, and *Freeland, Hall & Co. vs. Reynolds, Ib.,* 421, cited in argument, are cases where personal property was involved, and are not precisely analogous, though they sustain the doctrine that equity will not interfere where the law affords a remedy.

We can find nothing in the cases in this State in conflict with the conclusion we here reach.  The case of *McCann vs. Taylor,* 10 *Md.,* 418, so strenuously relied on by the appellee's counsel, as decisive of this case, when carefully examined, we found materially distinguishable from this, and does not sustain the appellee's view.  There the appeal was directly from the order granting an injunction on the averments of the bill, and this Court was confined

to the case made by the bill, and could not consider the answer. It did not appear to this Court that any fraud was relied on to defeat the complainant's title. That element, which is the controlling one in this case, was entirely wanting there to show the defendant's right to a trial at law. In that respect *McCann's Case* is situated, with reference to this case, precisely as Judge AGNEW said *Hunter's Appeal*, 4 *Wright*, 194, was to *Winches' Appeal*, which we have already cited and quoted from. The same Judge decided both, and said in the last mentioned case, that *Hunter's Case* afforded no countenance to the contrary of what was decided in *Winches' Appeal*, because the ownership was not put in issue by plea or answer. We are all clearly of opinion that the appellee ought not to have been awarded injunction to stop the appellant Welde from selling as he desired, in order that the question of fraud in the appellee's title, as charged, might be tested at law. Welde being the party who claims to have been defrauded by the conveyances under which the appellee takes title and possession, we think he is entitled to select the tribunal in which he will have his grievances inquired into and redressed, if he is entitled to redress; and although, it might be within the province of the Court of equity to interfere, if it appeared that he was fraudulently setting up this claim for the purpose of wantonly injuring the appellee as is charged in the bill, yet, inasmuch as there is not the slightest evidence in support of that allegation, and there is no reason to suppose he is doing otherwise than making an honest endeavor to secure his legal rights, we cannot sanction the arrest, of his proceedings in that direction, by injunction. We do not find it necessary to express any opinion upon the merits of the controversy respecting the validity or invalidity of the appellee's deed. As we have already said that is a question which we think should be remitted to a jury. If the complainant did knowingly assist Scarborough to dispose

of his property, to avoid the payment of such verdict and judgment as the appellant Welde might recover in his action for damages against Scarborough, then his title as against Welde cannot, and ought not, to be sustained; but unless that charge can be established, he cannot be disturbed in his title or possession. If the appellant as purchaser under the execution had filed a bill to set aside the deed of Scotten, the Circuit Court, as a Court of equity, having concurrent jurisdiction in such case, with a Court of law, would have entertained the suit without requiring him to bring ejectment. But clearly the party alleged to be damnified by fraud, ought not at the election of the party charged with its commission, to be forced into a forum in which he does not desire his rights to be decided upon. It would be reversing the order of things. If appellant had already bought under the execution, and brought ejectment, and this bill had been filed to stay that proceeding, the Circuit Court would not have usurped jurisdiction and taken the case away from the said Court, unless the defendant could not defend at law, which is not the case. The case would not have been allowed to proceed at law. If in such case the appellant would be allowed to proceed at law with his ejectment, we see no solid reason for preventing his making such purchase to put himself into such position, that he may litigate his title at law. It may be, that when he has bought, he cannot maintain the charge of fraud, the *onus* of which will be on him. The Circuit Court, on the case made in the proof, did not think he had made out the fraud, and gave the injunction upon that view. As already stated we intimate no opinion upon that branch of the case, because we think the appellant entitled to a trial at law, and before a jury, as he desires, on that question. It is apparent, from what we have said, that we do not agree with the appellee's counsel, that this is a question of jurisdiction not made in the Court below, and therefore, not

cognizable here.   It is true, there was no demurrer to the bill, but there was a motion to dissolve immediately on filing the answer, which motion was overruled and the injunction continued till final hearing.   So far as it can be regarded as a pure question of jurisdiction, it was sufficiently presented by the pleading, to have been raised on the motion to dissolve ; but it is not, as we regard it, so much a question of jurisdiction as of the proper exercise of the equitable discretion in respect to granting an injunction.   It is not an instance of the *total ouster* of jurisdiction, for it belongs to a class of cases of which equity does sometimes take hold and decide.   The complainant had no present remedy at law.   He could only wait to be sued and stand on his title and possession under it, until assailed for fraud, and then rebut the charges as best he could.   His only remedy by action of his own, if he was entitled to any, was to ask for an injunction; which, under the circumstances, we do not think he was entitled to.   We do not see that the fact that the appellant may long delay his suit, especially commends the appellee to the Court's interference by injunction upon the appellant.   Delay cannot injure him. His record title is indisputable on its face.   It can only be overthrown by showing it was fraudulently procured. From the very nature of the testimony needed to establish such a charge, the longer the production of the proof is deferred, the harder it will be to establish.   Delay to assert his claim is itself evidence of weakness, and inability to maintain it; whilst increasing security results to the appellee.

The decree will be reversed, and the bill dismissed.

*Decree reversed, and*
*bill dismissed.*

(Decided 13th July, 1882.)