Mr. Chief Justice Shepard
delivered the opinion of the-Court:
In our opinion the evidence on behalf of the plaintiff shows conclusively that the object of Koblen in offering his property for sale was to avoid payment of the damages, the recovery off which he feared in the pending action. To accomplish this purpose speedily, he offered to sell for $4,500 property worth, according to the weight of the evidence, at least $5,400. And before the recovery of the judgment he succeeded in disposing off all of the real estate that he had, consisting of this and the lot sold to the Liebmans. It is unnecessary to consider whether-sec. 1120 of the D. C. Code [31 Stat. at L. 1368, chap. 854] is more comprehensive in its terms than the statute 13 Eliz.. *250 chap. 5, "which it superseded; for it is the settled construction •of that statute, in this District and in Maryland, and elsewhere, that it extends its protection not only to technical creditors, but also to those whose claims and demands consist of actions for torts. Barth v. Heider, 7 D. C. 71; Cooke v. Cooke, 43 Md, 522—531; Gebhart v. Morfeld, 51 Md. 322—325; Welde v. Scotten, 59 Md. 72-76; Johnsons. Wagner, 76 Va. 587-590; Wait, Fraud. Conv. sec. 123.
The defendant Wright, having shown the actual payment of .a valuable consideration for the property, it devolved upon the plaintiff to show that he had knowledge of the fraudulent intent of Koblen in making the sale. Morimura v. Samaha, 25 App. D. C. 187—197. It was said in that case: “Where a sale has been made by the vendor with the intent to defraud creditors, it is not necessary, to constitute bad faith in the purchaser, who -may have paid a valuable consideration, that he either actually participated in the scheme to defraud, or had actual knowledge of the fraudulent intent of his vendor. Bad faith may exist where the facts and circumstances of the transaction are such .as to put him upon inquiry.” The evidence does not show that Wright directly co-operated with Koblen, or actually participated in his fraud. The most that can be said of him is that, with notice of Koblen’s intent, he took advantage of the opportunity presented to purchase the property for a price less than its actual market value. Knowledge of the fraudulent intent -of the vendor is, as we have seen, all that is necessary to avoid .such a sale. That Wright had knowledge of Koblen’s purpose is, we think, fully established by the evidence. Ellis, to whom Koblen applied to secure a purchaser, and to whom he •disclosed his purpose, testified that he had the property “listed” at the price by Brown, a real estate broker, as well as with 'Gladman, who was made Koblen’s direct agent. That he told Brown the reasons given by Koblen for wanting to sell at once, and at the reduced price. That he found some parties willing to buy the four lots separately at a price aggregating $4,450, and took deposits from them. That Wright came to Gladman’s -office later, and offered $4,500 for the entire property. That *251 Wrigbt was told of the pending suit, but said he was willing to take the property subject to the Title Company’s passing the title. that be said be understood everything about the ease; tbat Brown bad explained everything to him. • that after the ■statement concerning the suit, the offer was accepted. Wrigbt testified tbat the property was first offered to him by Brown about a week before, but tbat be bad not the money then to buy with; bad some property in Gladman’s bands for sale tbat be must first dispose of. G-ladman told him be bad found a purchaser for bis property, and offered him this property for .$4,700. He offered $4,500,—all tbat the property was worth, —which was accepted, and be deposited $50 on account of the purchase. Subsequently, be obtained a loan of $3,700 on the property, which, with $800 tbat be bad on band, were paid when the deed was delivered. He specifically denied the conversation testified to by Ellis relating to the suit for damages, etc. Glad-man was called as a witness by Wrigbt. Asked if be bad a •conversation with Wrigbt as to bis buying the property for the purpose of enabling Koblen to beat bis creditors, be said no. He could not remember just what conversation be bad with Wrigbt. All tbat be remembered was tbat Wrigbt came in the •office about two years ago, and witness spoke to him about the property, offering it for $4,700. Wrigbt seemed to be acquainted with the property, and offered $4,500, which was accepted. In answer to a question by counsel for Koblen, be said Koblen told him there was some suit or something like tbat, and be wanted to sell the property. He did not remember if be told the purchaser about tbat. Knew it would be a matter of examination, and if there was anything wrong it would come •out. Brown was called by Wrigbt as a witness, and testified as to the condition and value of the property. On cross-examination be testified tbat be was on intimate terms with Wrigbt, who came to bis office two or three times a week. that be collected rents for Wrigbt, amounting to about $285 per month. that the property bad been on bis books for sale for about two years at the price of $1,400 per lot. that about two months *252 before the conveyance to Wright, the price had been reduced to $1,200 per lot.
A vigorous attack was made upon the credibility of Ellis, on the argument, but, strange to say, Brown, who might have contradicted him if his statement was untrue, was not asked a question by the defendant concerning the alleged statement to him of Koblen’s purpose in reducing the price of the property, or as to his having repeated the same to Wright. Naturally, the plaintiff asked no questions relating to it. The plaintiff’s case, however, does not depend upon the evidence of Ellis alone. Wright had actual knowledge of the contents of the bill in equity filed by Turnburke against Koblens. Having to borrow money from the building association, he was required to have the title passed on by its counsel, who became his representative also for the purpose. It was nearly two months before the title was actually passed and the transaction concluded. Wright admitted that he was told that there was some complication that had to be straightened out. He was also told by the attorney that there was a suit pending against Koblen for damages, and of the equity suit. He said that there was a suit pending; that' there was a complication. That the building association was-the one to be satisfied, not himself. If he could not get the money from them, he could not buy the property.
The following written report on the title was made by the attorney on July 9, 1908:
Equity Cause No. 27,819. Doc. 61.
Louisa M. Turnburke, Plaintiff, v. Samuel Koblen, Defendant.
Bill filed May 23, 1908, to restrain sale of caption until plaintiff can recover judgment in law cause No. 50,229, filed in January, 1908, a suit for $15,000 damages. Demurred to-for want of jurisdiction in court, and demurrer sustained for want of compliance with rules of court.
Opinion.
I have examined the title of Samuel Koblen to caption, and *253 I am of the opinion from the records that the same is good, subject to taxes, the two above noted deeds of trust, and that the court is absolutely without jurisdiction to grant the relief prayed for in equity cause 27,819, Doc. 61. The sustaining of the demurrer in said case practically disposes of the bill, though the bill was not formally dismissed by order of the court. There is no judgment in law cause 50,229.
The attorney for the building association was, under the circumstances, the attorney of Wright also. Independently of any communication by Ellis or Brown, Wright had actual knowledge of the depending action for damages against Koblen. He also knew that the bill had been filed to prevent Koblen from disposing of the property. That the bill alleged the fraudulent purpose of Koblen was known to his attorney, who read it, and. communicated the fact to him. Whether, then, Ellis or Brown had or had not before informed him of Koblen’s purpose in offering the property at the reduced price, he had actual knowledge of the depending damage suit, of the reduction of the price, and of the charges made in the bill. These facts and circumstances were, in our opinion, reasonably sufficient to put a man of ordinary caution upon inquiry, at least. Wright prosecuted no inquiry, but was content, as he said, to rest entirely upon the judgment of the building association’s title expert. The attorney who reported upon the title was clearly right in the opinion that the so-called creditors’ bill, filed by a plaintiff in a depending damage suit, was subject to a demurrer for want of jurisdiction, and could not constitute a lien upon the property. For the same reason it was not constructive notice of the facts alleged in it; consequently, it was immaterial whether it had been dismissed or not at the time of the report upon the title. But when actually read, the facts alleged therein were brought directly to his attention. That he failed to appreciate their importance is immaterial.
For the reasons given, the decree will be reversed, with costs, and the cause remanded with direction to enter a decree in conformity with this opinion. Reversed.